UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-589-H

LIAM O'CONNELL, a minor by and
through his parents, PAM and SEAN O'CONNELL                PLAINTIFF

V.

LOUISVILLE METRO POLICE DEPARTMENT,
and OFFICER BERNARD ASH, individually and
in his official capacity                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Liam O'Connell, claims that his federal constitutional rights were violated due to arrest without probable cause and due to the use of excessive force. Plaintiff also has asserted state law claims of false arrest and outrageous conduct. Discovery is now complete and Defendants, Louisville Metro Police Department and Officer Bernard Ash, have now moved for summary judgment on all claims.[1] The Court has considered the motion, reviewed the record and has determined that Defendants are entitled to the relief requested.

I.

Plaintiff's claims arise from his arrest and detention on October 19, 2002. Plaintiff was 10 years old at the time. According to Plaintiff, he and a friend met up with another neighborhood kid. According to Plaintiff, one of the boys suggested that they go into a certain

---

[1] Defendants filed their motion on November 30, 2005. Plaintiff has not filed a response. The Court has attempted to advise counsel that a response is due. Over three months have passed and no response has been filed.

garage. Plaintiff admitted entering the garage on Lillian Avenue and he also admitted climbing up on the roof of another garage, also located on Lillian Avenue. Plaintiff testified that when he was on the roof of the garage, a woman yelled at him from her yard that she was going to call the police and he then got off the roof. After he got off the garage roof, the three boys ran around the corner, met up with some other friends and began walking through the alley behind Lillian Avenue. About ten minutes later, the police arrived.

Plaintiff testified that four police cars arrived at the scene. The police questioned all the juveniles. Plaintiff admitted to the officer that he had been on the roof of a garage; he denied that he had broken into the garage. Plaintiff testified that he was the only kid on the roof of the garage and that when the lady yelled that she was going to call the police, she only saw him.

Plaintiff identified Officer Ash as the bald guy and the other officer who was with him that day as having black spiky hair. He testified that these two were the officers who questioned him that day. Plaintiff's claim for excessive or unlawful force is based on his assertion that Officer Ash cursed at him, yelled at him and placed him in handcuffs.

When asked about the excessive force used against him, Plaintiff responded that it was "just putting the handcuffs on us and putting us in the car." Plaintiff admitted that the handcuffs were not put on too tightly; that he was handcuffed with his hands in front of him and, that he was led to the back of the police vehicle by Officer Ash. When asked if he had told his parents on the night of his arrest that the officer used excessive force against him, Plaintiff replied: "I don't think I did." Plaintiff's mother testified that she believed that arresting a 10 year old child, handcuffing him, cussing and yelling at him and taking him downtown to the Youth Center constituted "excessive force." Plaintiff's father alleges that the excessive force used against

2

Plaintiff was "taking him into custody, . . . putting them in handcuffs . . . and the verbal, the verbs that he used to – and the harshness in the way he was saying it."

Mr. O'Connell testified that he watched part of the video tape of his son's arrest when the arresting officer returned to the neighborhood later that evening on a missing person report. The officer who responded advised the O'Connell's that he had arrested their son earlier that evening. Mr. O'Connell testified that the officer had the video of the arrest in his car and that he watched part of it though the open car door at the invitation of the officer and saw and heard the officer state to the kids on the video tape: "I'm tired of this shit. I want some straight answers or I'm taking you downtown." Mr. O'Connell testified that he thought the officer had used other curse words but he was upset at the time and did not recollect any specific words used. He did not watch the entire video of the arrest.

## II.

In this particular case, the liability of any governmental entity is based upon the actions of its employees. Plaintiff has sued an entity, the Metro Police Department, which cannot be liable. However, the analysis of the claims against the individual officer will proceed in the same manner. The Court will analyze the individual claims first and conclude with a brief analysis of the official capacity claims.

## A.

A governmental official, sued in his individual capacity, has qualified immunity from personal liability for discretionary acts performed in the scope of employment. The official is shielded "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

3

*Harlow v. Fitzgerald*, 557 U.S. 800, 818 (1982). A two-prong analysis governs the application of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, viewing the facts in the light most favorable to the claimant, did the official's conduct violate the claimant's constitutional rights? Secondly, if the violation of a constitutional right is demonstrated, was that right clearly established at the time?

Plaintiff's claim that he was arrested without probable cause is based on the fact that the charges against him were subsequently dismissed. Under well-established Sixth Circuit case law Officer Ash had probable cause to arrest Plaintiff and he violated no constitutional standard in doing so. In *Crockett v. Cumberland College*, 316 F.3d 571 (6th Cir. 2003), the Sixth Circuit discussed when a police officer has probable cause for an arrest:

> For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed or is about to commit an offense." 316 F.3d at 580.

Citing long-standing case law, the Court noted that "probable cause" is assessed from the view of the officer on the scene at the time–not with the benefit of hindsight.

Here, Officer Ash had an eyewitness who identified the suspects as the ones who had broken into the residence and climbed onto the roof of the garage. At the time of his arrest, Plaintiff had admitted to the officers that he was on the roof of the garage–Plaintiff essentially had confessed to one of the charges brought against him. Officer Ash had Plaintiff's confession and an eyewitness identification to support his arrest. These facts known to Officer Ash establish that he had sufficient probable cause to arrest Plaintiff. Therefore, he did not violate Plaintiff's constitutional rights and he is entitled to dismissal of this claim as a matter of law.

B.

Plaintiff's claim of excessive force is based on his allegations that Officer Ash cursed at him and handcuffed him when he arrested him. It is well established that a claim based on vulgar or abusive language is insufficient to state a constitutional deprivation. *See Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987). This holding was cited with approval by the Sixth Circuit in *Schrader v. Patrick*, 181 F.3d 103 (6th Cir. 1999). Officer Ash's cursing at or verbal abuse of Plaintiff does not constitute a constitutional violation as a matter of law.

Another part of Plaintiff's claim arises from his handcuffing. He admitted that the handcuffs were not placed on him too tightly. In *Kain v. Nesbitt*, 156 F.3d 669 (6th Cir. 1998), the Court has said that a claim for excessive force based on handcuffing alone would be dismissed as a matter of law under Fed. R. Civ. P. 12(b)(6) because it would be apparent that no constitutional violation had been pleaded. This observation was adopted and made explicit in *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001), a case involving a seventh grade student who was handcuffed by a police officer at school, when the Sixth Circuit Court of Appeals held: "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim for excessive force under the Fourth Amendment." Neither vulgar language nor handcuffing incident to an arrest implicate a deprivation of a constitutional right and Plaintiff's claim that his Fourth Amendment rights were violated should be dismissed as a matter of law.

C.

A suit against a public officer in his "official capacity" is essentially a suit again the entity he represents.

5

> Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Commonwealth of Kentucky Board of Claims v. Harris, supra*, at 899, citing *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985).

In the present case, the claim against Ash in his official capacity is actually a claim made against the Louisville Metro Government. Therefore, Ash is entitled to dismissal of the claim made against him in his official capacity. Furthermore, Metro Government has no liability for the official capacity claim against Ash as a government is not liable under the theory of respondeat superior in a 42 U.S.C. § 1983 action. *See Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). Plaintiff makes no allegations that Louisville Metro Government caused the deprivation of his constitutional rights.

### III.

Plaintiff's claim for false imprisonment arises from his arrest by Officer Ash and his subsequent detention at the Jefferson County Youth Center.

Under Kentucky law a claim of false imprisonment requires that the restraint or imprisonment be "wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Banks v. Fritsch*, 39 S.W.3d 472 (Ky. App. 2001). Officer Ash, acting as a police officer, had the authority to arrest Plaintiff. Viewed in a light most favorable to Plaintiff, Officer Ash had probable cause to arrest Plaintiff and transport him to the Jefferson County Youth Center. Plaintiff admitted trespassing on the roof of the garage and an eyewitness identified him as one of the juveniles who had broken into the vacant residence. Officer Ash had the authority and the requisite probable cause to arrest Plaintiff and therefore, his false imprisonment claim

must be dismissed. He was not detained, restrained or imprisoned wrongfully, improperly or without reasonable justification. Under long-standing Kentucky law, Plaintiff's claim of false imprisonment or false arrest fails as a matter of law.

IV.

Plaintiff's claim against Officer Ash for outrageous conduct arises from being "roughly questioned," falsely arrested, restrained and detained against his will and use of intentional and malicious force so as to create a fear of immediate peril. Plaintiff also claimed severe emotional distress in his complaint, but his testimony does not disclose any psychological or physical injury nor any changed conduct or lifestyle. Plaintiff testified that he was sick to his stomach after he got arrested, but he did not know if he had been humiliated or had suffered emotional pain as a result of the incident. Plaintiff also admitted that he was not in fear for his life or safety as a result of Officer Ash's actions.

Kentucky first recognized the tort of outrageous conduct in *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984), when the Kentucky Supreme Court adopted a portion of Section 46 of the Restatement (Second) of Torts. That portion provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

No action for outrageous conduct for "petty insults, unkind words and minor indignities." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). One must show that the conduct was intentional or reckless, that it was so extreme as to offend generally accepted standards of morality and decency, that the conduct caused the distress suffered and that the emotional distress was severe. *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990).

7

Plaintiff's claim for outrageous conduct fails as a matter of law. He did not suffer severe emotional distress, a prerequisite for liability. Officer Ash made a legal arrest and took Plaintiff to the Youth Center. He did not intend to cause emotional distress. The conduct itself does not offend generally accepted standards of morality and decency.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final and appealable order.

cc: Plaintiffs
    Counsel of Record